**Theodore A. Allen, Plaintiff-Appellee, v. Board of Appeals of the City of Chicago, a Municipal Corporation, Defendants-Appellants.**

Gen. No. 53,376.

First District, Fourth Division.

December 31, 1969.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Howard C. Goldman, Assistant Corporation Counsel, of counsel), for appellants.

No brief for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This is an appeal from a judgment in favor of plaintiff, in an administrative review action, reversing a

decision of the Board of Appeals which had denied plaintiff's application for a "special use" permit.

■ Although plaintiff-appellee has failed to file a brief in this court, we will nevertheless consider the appeal on its merits. See Daley v. Jack's Tivoli Liquor Lounge, Inc., 118 Ill App2d 264, 254 NE2d 814.

Plaintiff originally filed an application for a "special use" permit with the Zoning Administrator. This was denied on March 2, 1967, and he then appealed to the Board of Appeals. After a hearing, the Board of Appeals, on June 5, 1967, also denied plaintiff's application.

The application concerns the premises located at 5910–12, 5916–18, and 5922–24 West 63rd Street, Chicago, and requests that plaintiff be allowed to erect one two-story brick, nine-dwelling-unit apartment building and two three-story brick, eight-dwelling-unit apartment buildings. The premises in question are vacant and are zoned under the Chicago Zoning Ordinance as B4–2, restricted service district.

Plaintiff's complaint for administrative review, filed July 10, 1967, alleged that the decision of the Board of Appeals was insufficient in law and contrary to the zoning laws and "to the law applicable to the evidence received by the Board upon the hearing." It further alleged that the City's reliance upon discriminatory ordinances in refusing to allow the proposed use deprived plaintiff of due process and equal protection of the law. Plaintiff asked that the order of the Board be reversed and that a permit be issued in accordance with his application.

Defendants' answer to plaintiff's complaint included among the exhibits six letters from residents of the area in which plaintiff proposed to erect the structures. These letters specified the objections of the residents, indicating that the proposed buildings and the consequent influx of more people and more automobiles would result in serious parking problems and conditions inimicable to

377

children. The answer asked that the Board's findings be affirmed.

The hearing before the Board of Appeals produced the following testimony. Plaintiff testified that his proposed buildings would, in essence, comply with R4 zoning requirements. He stated that he was unable to obtain mortgage loans to provide for stores on the first floor, one of the requirements of the existing B4–2 zoning, and there were few stores in the area and many vacant ones. He has constructed other buildings on the south side of the street. When asked why he didn't "go in for an amendment to R4 instead of B4–2," plaintiff replied that "such applications for amendments were denied right and left. In essence we are lining up with R4 pretty closely."

He testified further that he thought the buildings would help the neighborhood. Except for a dry cleaner, tavern, and beauty shop, the block where the property is located was vacant. A large group of stores is located on the north side of 63rd Street from Central (5600 West) to Menard (5800 West). He further testified that stores are "gone" and that apartments have "taken over" because of the demand.

A resident of the area then testified and presented a petition signed by 45 local residents who objected to the proposed building. He stated that parking for residents in the area was presently very congested and that the recent erection of a drive-in restaurant and the presence of a nearby church had aggravated the problem. An alley behind the property is also heavily used, and the proposed apartments would constitute an additional hazard to the children in the area.

Alderman Kuta testified in favor of the proposal, saying that the buildings would be an asset. He stated that it would have been a better procedure had application been made to the City Council to rezone to R4, but said that these have always been turned down in that Ward,

although lately a few such applications have been granted.

A member of the Board of Appeals engaged in a brief dialogue with plaintiff and suggested that plaintiff's proposal would not be in compliance with zoning requirements even if the property were rezoned R4, and also that, contrary to plaintiff's assertions, there had been substantial opposition to his plans. Plaintiff agreed that there would be a parking problem, and could point out nothing in his architect's proposal which was designed to alleviate that problem. Plaintiff's only suggestion was that he would help combat the traffic hazard in the alley by putting guard rails in back of the parking area.

Plaintiff urged upon the Board that without the additional units which would not be in compliance with present zoning, he could not "come out as well," and that to "get a good return on our money" the additional units covered by the special use application would be needed. Another board member commented to plaintiff that since plaintiff had developed other property in the area, he had known what the zoning laws were at the time he had purchased this property four months earlier. Plaintiff did not reply.

The Board of Appeals, in denying the application for the special use, found:

> "that the use contemplated is not necessary for the public convenience at this location; that the subject property is located in a highly developed area in which there are now many successful business uses in existence; that there are no vacant stores in this block; that the addition of dwelling units on the ground floor at this location will not contribute to the public health, safety and welfare in the community; that the business uses in the block are needed and should not be interrupted with dwelling units on the ground floor, . . . ."

379

The Circuit Court found that the decision of the Board of Appeals was contrary to the manifest weight of the evidence because the record showed:

a. That the Special Use and zoning variation sought by plaintiff is necessary for the public convenience at the location in question;

b. That the Special Use and zoning variation sought by plaintiff is designed, located and proposed so that the public health, safety, and welfare will be protected;

c. That the Special Use and zoning variation sought by plaintiff will not cause substantial injury to the value of other property in the neighborhood in which it is to be located;

d. That the Special Use and zoning variation sought by plaintiff is within the provisions of "Special Uses" as set forth in said Zoning Ordinance of the City of Chicago; and

e. That the Special Use and zoning variation sought by plaintiff conforms to the applicable regulations of the zoning district in which it is to be located.

██ Defendants contend that plaintiff has failed to introduce evidence sufficient to warrant the granting of a "special use." Specific standards governing the granting of a "special use" are found in section 11.10–4 of the Chicago Zoning Ordinance (Municipal Code of Chicago, c 194A, par 11.10–4), which states that "no special use shall be granted by the Zoning Board of Appeals unless the special use:

"(1) a. Is necessary for the public convenience at that location;

"b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

"(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and

"(3) It is within the provisions of 'Special Uses' as set forth in rectangular boxes appearing in Articles 7, 8, 9, and 10; and

"(4) Such special use shall conform to the applicable regulations of the district in which it is to be located."

■ This language being in the conjunctive, an application for a "special use" has the burden of proving that the proposed use will meet all of the standards required by the ordinance. See International Harvester Co. v. Zoning Board of Appeals of City of Chicago, 43 Ill App 2d 440, 450, 193 NE2d 856; Pioneer Trust & Savings Bank v. County of McHenry, 89 Ill App2d 257, 232 NE2d 816; Kotrich v. The County of DuPage, 19 Ill2d 181, 166 NE2d 601; and Audino v. Board of Appeals of City of Chicago, 75 Ill App2d 347, 221 NE2d 34.

■ Our study of the record and examination of the accompanying exhibits force us to the conclusion that plaintiff's proof failed to satisfy any of the ordinance requirements, let alone all of them. The decision of the Board of Appeals was clearly dictated by plaintiff's failure to meet his burden of proof in this regard, and we find nothing in the record to justify the Circuit Court's conclusion that the Board's decision was contrary to the manifest weight of the evidence. The judgment of the Circuit Court is therefore reversed and the cause remanded with directions to enter judgment affirming the Board of Appeals' denial of plaintiff's application for a special use.

Reversed and remanded with directions.

DRUCKER, P. J. and STAMOS, J., concur.